IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-0228

_____

FILED

**June 13, 2013**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

DANIEL R. GRINDO,
Respondent

_____

Lawyer Disciplinary Proceeding

PUBLIC REPRIMAND AND OTHER SANCTIONS

_____

Submitted: May 14, 2013
Filed: June 13, 2013

Rachael L. Fletcher Cipoletti, Esq.          Daniel R. Grindo, Esq.
Chief Lawyer Disciplinary Counsel            *Pro Se*
Office of Disciplinary Counsel               Law Office of Daniel R. Grindo, PLLC
Charleston, West Virginia                    Gassaway, West Virginia
Counsel for the Petitioner

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

2.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. pt. 3, *Legal Ethics of W. Va. v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

3.      "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public

i

confidence in the ethical standards of the legal profession." Syl. pt. 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

4. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim

rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6.     "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

Per Curiam:

This is a lawyer disciplinary proceeding arising from a complaint filed against Respondent Daniel R. Grindo ("Mr. Grindo") by Petitioner Lawyer Disciplinary Board ("LDB" or "the Board"). A Hearing Panel Subcommittee ("HPS") of the LDB determined that Mr. Grindo violated three *Rules of Professional Conduct* as a result of conduct stipulated to by the parties. Consequently, the HPS recommended that Mr. Grindo be admonished along with other sanctions.[1]

---

[1] In addition to admonishment, the HPS originally recommended the following sanctions:

> B. That Respondent shall have his law office audited by an expert to evaluate the efficiency of the management of the same and implement any changes deemed necessary in the expert's report. To that end, the HPS has received a detailed report (17 pages in length) with attached exhibits from Affinity Consulting Group, which outlined the practice management techniques and technologies which were identified and recommended in order to assist Respondent in complying [sic] with violations. The report was comprehensive and included a number of practice management suggestions which should assist Respondent in conducting his law practice in a manner in which would avoid further problems similar to those described in the statement of charges.

> C. That Respondent cause said law office expert to return 6 months after his initial assessment to conduct an evaluation as to the implementation of the recommended changes. It is anticipated that there will be a follow-up in January or February, 2013, by the same consulting group.

> D. That Respondent shall complete an additional 3 hours of CLE during the 2012-2014 reporting period, specifically in

(continued . . .)

Mr. Grindo does not contest the findings that he committed violations of the *Rule of Professional Conduct* and he requests this Court to accept the LDB's recommendation. However, in January 2013, this Court issued an order indicating that we may not concur with the recommended disposition. Therefore, we ordered the parties to submit briefs and we set this case for oral argument pursuant to Rule 19 of the *Rules of Appellate Procedure*. Mr. Grindo did not present himself for the oral argument of this case.[2] In addition, counsel for the LDB notified this Court at that time that Mr. Grindo had failed to timely file a brief as counsel in an unrelated case before this Court. In light of these two facts, counsel for the LDB stated that she could no longer recommend admonishment as an appropriate sanction. However, Mr. Grindo subsequently filed the brief in the unrelated case within the extended time period granted by this Court.[3]

---

the area of ethics and office management over and above that already required by the Mandatory Continuing Legal Education Commission.

E. Pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure, Respondent shall pay costs of this disciplinary proceeding.

[2] On May 14, 2013, Mr. Grindo filed a motion for additional hearing with this Court in which he apologized for his failure to appear at oral argument and indicated that this failure was due to a mistake in his calendar in which he believed that the oral argument was scheduled for May 16, instead of May 14, 2013. Mr. Grindo requested that this Court grant him another opportunity to appear and be heard on this matter. Counsel for the LDB responded that the LDB had no objection if this Court believed that oral argument is necessary. By order entered on May 20, 2013, this Court refused Mr. Grindo's motion for an additional hearing.

[3] Specifically, the original deadline for Mr. Grindo to file a brief or summary response in the unrelated case was April 22, 2013. Mr. Grindo failed to file a pleading by that date. (continued . . .)

For the reasons provided below, this Court finds that a public reprimand and other sanctions recommended by the Lawyer Disciplinary Board are appropriate under the facts of this case, and these sanctions are hereby imposed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Mr. Grindo practices law in Braxton County, West Virginia. He was admitted to the West Virginia State Bar in September 2002. The Office of Disciplinary Counsel ("ODC") has filed a two-count complaint against Mr. Grindo. The parties have stipulated to the allegations in the complaint which are set forth below.

### A. Count I

In August 2009, Mr. Grindo filed a Petition for Appeal on behalf of Jeffrey Skidmore in this Court which challenged an adverse circuit court ruling. This Court subsequently granted the petition for appeal and issued a briefing/scheduling order on December 21, 2009, requiring Mr. Grindo to file an appellant's brief with this Court within thirty days of receipt.

---

As a result, by order dated April 30, 2013, this Court directed Mr. Grindo to file a brief or summary response within 20 days of the order. Mr. Grindo subsequently filed the pleading on May 15 which was within the 20-day time period.

When Mr. Grindo failed to submit a brief within the requisite time, the Clerk of this Court contacted Mr. Grindo in March 2010 by telephone. Mr. Grindo informed the Clerk that he would send his brief the next day. However, by June 8, 2010, Mr. Grindo still had not filed an appellant's brief. As a result, the Clerk's office of this Court mailed a letter to Mr. Grindo giving him an additional twenty days from receipt of the letter to file the brief. Mr. Grindo did not file a brief or otherwise respond to the Clerk's letter.

In September 2010, Mr. Grindo's dilatory conduct with regard to filing the brief was presented to this Court for imposition of sanctions pursuant to Rule 10(e) of the *Rules of Appellate Procedure*. By order of that same day, this Court directed Mr. Grindo to file the brief of the appellant within 15 days of his receipt of the order. This Court also referred the matter to the ODC. In response, the ODC initiated a complaint against Mr. Grindo pursuant to Rule 2.4 of the *Rules of Lawyer Disciplinary Procedure*. On or about September 17, 2010, the ODC sent Mr. Grindo a complaint requiring a verified response within 20 days of receipt.

On October 4, 2010, Mr. Grindo filed Mr. Skidmore's appellate brief with this Court.[4] On or about October 12, 2010, Mr. Grindo filed a verified response to the

---

[4] On April 4, 2011, this Court issued an opinion in which we granted partial relief to Mr. Grindo's client, Mr. Skidmore.

4

ethics complaint against him in which he stated that he was handling Mr. Skidmore's case on a *pro bono* basis and admitted that he failed to adhere to this Court's briefing schedule.

As a result of Mr. Grindo's conduct in failing to timely pursue the appeal on behalf of Mr. Skidmore, the Lawyer Disciplinary Board found that Mr. Grindo violated Rule 1.3 of the *Rules of Professional Conduct* which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." In addition, because Mr. Grindo failed to comply with this Court's briefing schedule and failed to expedite the litigation in the interests of Mr. Skidmore and the justice system, the Board found that Mr. Grindo violated Rule 3.2 and Rule 3.4(c) of the *Rules of Professional Conduct*. According to Rule 3.2, "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client." Rule 3.4 provides that "[a] lawyer shall not . . . (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

**Count II**

On or about June 16, 2011, Mr. Grindo filed a Notice of Appeal with this Court on behalf of Joseph Dobbins. This Court then issued a briefing/scheduling order on June 21, 2011, requiring Mr. Grindo to file his brief to perfect the appeal by July 18, 2011. Mr. Grindo filed the required appendix on or about July 29, 2011, but failed to file the Petitioner's Brief. As a result, the Clerk of this Court contacted Mr. Grindo by

5

telephone on several occasions requesting the filing of the appellate brief. Mr. Grindo advised the Clerk that he would promptly file the brief, but he failed to do so.

On or about August 26, 2011, the opposing party in Mr. Dobbins' case filed a Motion to Dismiss with this Court for Mr. Grindo's failure to perfect the appeal. This Court granted the motion by order entered September 8, 2011. This Court thereafter referred the matter to the Office of Disciplinary Counsel.

Consequently, the Office of Disciplinary Counsel initiated a complaint which it sent to Mr. Grindo requesting a verified response within 20 days of receipt. On or about October 13, 2011, Mr. Grindo filed a verified response in which he acknowledged that he failed to either file a motion to withdraw or otherwise comply with the order of this Court directing him to perfect the appeal on Mr. Dobbins' behalf. The Lawyer Disciplinary Board found that because Mr. Grindo failed to comply with this Court's briefing schedule and failed to expedite the litigation in the interest of Mr. Dobbins and the justice system, Mr. Grindo violated Rule 3.2 and Rule 3.4(c) of the *Rules of Professional Conduct*.

## II.     STANDARD OF REVIEW

This Court's standard of review in lawyer disciplinary cases is well settled. We previously have made clear that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or

annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). In addition, we have set forth the standard for our consideration of recommendations of the LDB as follows:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Legal Ethics of W.Va. v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994). Mr. Grindo does not dispute the allegations as charged. Therefore, the sole issue for this Court is deciding the appropriate sanctions. This issue is governed by a *de novo* standard of review. Having set forth the appropriate standard of review, we proceed to consider the question before us.

## III.   DISCUSSION

The sole issue in this case is the appropriate sanctions for Mr. Grindo's violations of the *Rules of Professional Conduct.* Rule 3.15 of the *Rules of Lawyer Disciplinary Procedure* sets forth permissible sanctions for lawyer misconduct as follows:

> A Hearing Panel Subcommittee may recommend or
> the Supreme Court of Appeals may impose any one or more

of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

To assist this Court in achieving both consistency and fairness in lawyer disciplinary matters, we have recognized a number of factors to be considered in fashioning the proper discipline for a lawyer who violates an ethics rule. Specifically, this Court has held:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

Further, this Court has indicated:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's

8

misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disc. Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). With regard to what constitutes mitigating factors, this Court previously has held:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). We have defined aggravating factors as follows: "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *id.*

The HPS found that Mr. Grindo knowingly and intentionally violated duties owed to his clients and the legal system. It also determined that Mr. Grindo's conduct caused actual injury to his clients and potential injury to the reputation and integrity of the legal profession. Further, the HPS found that the following mitigating factors were present:

9

1. full and free disclosure to the Office of Disciplinary Counsel; 2. a cooperative attitude toward proceedings; 3. remedial measures in his law office, including, but not limited to retaining the services of Affinity Consulting [S]ervices to conduct an audit of his law office and his law office management to be scheduled in the immediate future.[5] [Mr. Grindo] also indicated that he is scheduled for a continuing legal education seminar on law office management; 4. [Mr. Grindo] has acknowledged that he became overextended with his growing practice and needed both assistance and to withdraw from some of the extra-curricular activities. To that end, [Mr. Grindo] has hired a new associate as of March 18, 2012 and has prioritized his other obligations; and 5. personal, family problems during the relevant time period, including that [Mr. Grindo's] son was being seen on the a [sic] possible spinal tumor that stemmed from some leg weakness he was experiencing. This condition resulted in much testing and diagnosis. After it was determined that he did not have a spinal tumor, he was treated and diagnosed with ketotic hypoglycemia. This diagnosis involved extensive testing at Charleston Area Medical Center, Thomas Memorial, and ultimately the Pittsburgh Children's Hospital; and 6. remorse, as it is [Mr. Grindo's] sincere stated intention to provide quality legal representation to the State of West Virginia and [Mr. Grindo] does not believe his misconduct in this matter is indicative of the quality of work that he is capable of providing in the future.

(Footnote added). Finally, the HPS found the presence of the following aggravating

factors:

---

[5] The Board indicates in its brief that the HPS withheld its decision until an expert on law office management evaluated Mr. Grindo's office procedures. The HPS received and reviewed a detailed report with attached exhibits from Affinity Consulting Group which outlined the practice management techniques and technologies which were identified and recommended in order to assist Mr. Grindo. The HPS concluded that the report was comprehensive and included a number of practice management suggestions which should assist Mr. Grindo in conducting his law practice in a manner which would avoid further problems like those in the instant case.

> 1. experience in the practice of law; 2. prior disciplinary action by the Investigative Panel of the Lawyer Disciplinary Board for neglect; 3 pattern and practice of not diligently pursuing clients' interests; 4. pattern and practice of failing to expedite litigation consistent with the interests of his clients and the justice system; and 5. pattern and practice of failing to respond to briefing schedules and requests from the Supreme Court of Appeals of West Virginia.

(Footnote omitted). Mr. Grindo does not challenge and this Court finds no reason to disturb these findings. Therefore, we will now proceed to apply our law set forth above to these facts to determine the appropriate sanction in this case.

This Court finds that in light of Mr. Grindo's past history of being admonished by the Investigative Panel of the LDB, there is case law that supports a 30-day suspension of Mr. Grindo's law license. *See, e.g.*, *Lawyer Disciplinary Board v. Sullivan*, __ W. Va. __, 740 S.E.2d 55 (2013). Also, the fact that Mr. Grindo failed to respond to the deadlines and entreaties of this Court regarding the filing of briefs certainly weighs heavily against Mr. Grindo in determining his appropriate discipline. For these reasons, we believe that admonishment is not a sufficient sanction under these facts.

However, this Court also must consider the large number of mitigating factors in this case, particularly the remedial measures taken by Mr. Grindo such as hiring another associate to assist in managing the responsibilities of his law practice and his employment of the services of a law office management expert. In addition, this Court

11

takes special note of the fact that a serious medical issue involving a member of Mr. Grindo's family dominated a significant portion of Mr. Grindo's time and attention during the relevant time period. In light of these mitigating factors, this Court believes that suspending Mr. Grindo's license would be unduly severe.

After careful consideration of the facts of this case, including the mitigating and aggravating factors, this Court finds that the appropriate sanction is a public reprimand in addition to the other sanctions originally recommended by the HPS. A public reprimand is a more severe sanction than admonishment but a lesser sanction than suspension of Mr. Grindo's law license. We are persuaded that a public reprimand and the other sanctions appropriately punish Mr. Grindo. We also are confident that these sanctions are adequate to serve as an effective deterrent to other members of the Bar. Finally, we believe that these sanctions are sufficient to restore public confidence in the ethical standards of the legal profession.

## IV.    CONCLUSION

For the foregoing reasons, we impose the following discipline on Mr. Grindo as respondent to this proceeding:

(1) That Mr. Grindo be reprimanded;

(2) That Mr. Grindo continue to implement the practice management suggestions contained in the detailed report prepared by Affinity Consulting Group for the purpose of avoiding further problems of the kind that gave rise to the instant disciplinary proceedings;

12

(3) That Mr. Grindo, if he has not already done so, cause the law office expert to return to conduct an evaluation of the implementation of the recommended changes.

(4) That Mr. Grindo shall complete an additional 3 hours of continuing legal education during the 2012-2014 reporting period, specifically in the area of ethics and office management over and above that already required by the Mandatory Legal Education Commission.

(5) Pursuant to Rule 3.15 of the *Rules of Lawyer Disciplinary Procedure*, Mr. Grindo shall pay the costs of this disciplinary proceeding.

Public Reprimand and other sanctions imposed.